Roderick G. Dorman (SB 96908)
rdorman@mckoolsmithhennigan.com
MCKOOL SMITH HENNIGAN, P.C.
300 S. Grand Avenue, Suite 2900
Los Angeles, CA 90071
Telephone: (213) 694-1006

John B. Campbell (*admitted pro hac vice*)
jcampbell@McKoolSmith.com
Lindsay Martin Leavitt (*admitted pro hac vice*)
lleavitt@McKoolSmith.com
Matthew B. Rappaport (*admitted pro hac vice*)
mrappaport@McKoolSmith.com
MCKOOL SMITH, P.C.
300 W. 6th Street, Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700

*Attorneys for Plaintiff*
ODYSSEY WIRELESS, INC.

McKool Smith, P.C.
Austin, TX

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

| | |
|---|---|
| ODYSSEY WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> LG ELECTRONICS, INC., *et al.*, <br><br> Defendants. | Case No.  3:15-cv-01743-H-RBB <br><br> **PLAINTIFF ODYSSEY'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL** <br><br> Judge: Hon. Ruben B. Brooks |
| ODYSSEY WIRELESS, INC., <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD, *et al.*, <br><br> Defendants | Case No.  3:15-CV-01738-H-RBB |

| | |
|---|---|
| ODYSSEY WIRELESS, INC., | Case No.  3:15-CV-01741-H-RBB |
| Plaintiff, | |
| v. | |
| MOTOROLA MOBILITY LLC, | |
| Defendant. | |
| ODYSSEY WIRELESS, INC., | Case No.  3:15-CV-01735-H-RBB |
| Plaintiff, | |
| v. | |
| APPLE INC., | |
| Defendant. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKool Smith, P.C.
Austin, TX

McKool Smith, P.C.
Austin, TX

# TABLE OF CONTENTS

I.     **INTRODUCTION** ................................................................ 1

II.    **BACKGROUND** ................................................................ 3

III.   **ARGUMENT** ................................................................ 4

    A.    ████████████ **Agreements and Communications are Protected Work Product.** ................................................ 4

        1.    **Work-product protects Odyssey's** ████████ **████████ and communications.** ................................ 5

        2.    **Work-product protection is not restricted to documents and tangible things.** ................................................ 7

        3.    **The withheld materials were prepared in anticipation of litigation.** ................................................ 10

        4.    **Odyssey did not waive work-product protection.** ................ 11

    B.    **Odyssey's** ████████████ **and Communications are Irrelevant to Defendants' Claims.** ................ 13

        1.    ████████████ **is irrelevant to the underlying litigation.** ................................................ 14

        2.    ████████████ **is irrelevant to damages.** ................ 15

    C.    **Attorney-Client Privilege Protects** ████████████ **Communications.** ................................................ 17

    D.    **Defendants' "Catch-All" Request for Relief is Vague and Insufficient.** ................................................ 19

    E.    **Denying Protection to** ████████████ **Would Deprive Small Inventors of Their Right to Litigate.** ................ 20

IV.   **CONCLUSION** ................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Civil Liberties Union of N. California v. Dep't of Justice,*
  70 F. Supp. 3d 1018 (N.D. Cal. 2014) ..................................................... 11

*Ashghari-Kamrani v. United Services Automobile Ass'n,*
  No. 2:15-CV-478 (E.D. Va. May 31, 2016) (Ex. D) ...................... 3, 14, 15

*Canel v. Lincoln Nat. Bank,*
  179 F.R.D. 224 (N.D. Ill. 1998) ................................................................ 6

*Caremark, Inc. v. Affiliated Computer Services, Inc.,*
  195 F.R.D. 610 (N.D. Ill. 2000) ............................................................... 6

*Carlyle Inv. Mgmt. LLC v. Moonmouth Co. S.A.,*
  No. CV 7841-VCP, 2015 WL 778846 (Del. Ch. Feb. 24, 2015) ............... 2, 5, 9, 16

*Citizens for Ceres v. Superior Court,*
  217 Cal. App. 4th 889 (2013) ................................................................ 18

*Cont'l Oil Co. v. United States,*
  330 F.2d 347 (9th Cir. 1964) ................................................................ 18

*Devon IT, Inc. v. IBM Corp.,*
  No. 10-2899, 2012 WL 4748160 (E.D. Pa. Sept. 27, 2012) ........................ 2, 5, 19

*Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP,*
  124 F.3d 1304 (D.C. Cir. 1997) .......................................................... 8, 16

*Doe v. Soc'y of Missionaries of Sacred Heart,*
  No. 11-cv-02518, 2014 WL 1715376 (N.D. Ill. May 1, 2014) ....................... 2, 5

*Garcia v. City of El Centro,*
  214 F.R.D. 587 (S.D. Cal. 2003) ............................................................. 9

*Gen-Probe Inc. v. Becton, Dickinson & Co.,*
  Nos. 09cv2319, 10cv0602, 2011 WL 997189 (S.D. Cal. Mar. 18,
  2011) ................................................................................................... 8, 9

McKOOL SMITH, P.C.
AUSTIN, TX

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Georgia-Pacific Corp. v. United States*,
  318 F. Supp. 1116 (S.D.NY. 1970) .................................................................. 16, 17

*Hewlett-Packard Co. v. Bausch & Lomb, Inc.*,
  115 F.R.D. 308 (N.D. Cal. 1987) .................................................................. 18, 19

*Hickman v. Taylor*,
  329 U.S. 495 (1947).................................................................. 5, 7, 14

*Hunydee v. United States*,
  355 F.2d 183 (9th Cir. 1965) .................................................................. 18

*In re California Pub. Utils. Comm'n*,
  892 F.2d 778 (9th Cir. 1989) .................................................................. 10

*In re Cendant Corp. Sec. Litig.*,
  343 F.3d 658 (3d Cir. 2003) .................................................................. 8

*In re Grand Jury Subpoena*,
  357 F.3d 900 (9th Cir. 2004) .................................................................. 7, 10

*In re Grand Jury Subpoena Dated Nov. 8, 1979*,
  622 F.2d 933 (6th Cir. 1980) .................................................................. 8

*In re Int'l Oil Trading Co., LLC*,
  548 B.R. 825 (Bankr. S.D. Fla. 2016) .................................................................. passim

*In re Mortgage & Realty Trust*,
  212 B.R. 649 (Bankr. C.D. Cal. 1997) .................................................................. 18

*In re Murphy*,
  560 F.2d 326 (8th Cir. 1977) .................................................................. 7, 8

*In re Prof'ls Direct Ins. Co.*,
  578 F.3d 432 (6th Cir. 2009) .................................................................. 10

*Intel Corp. v. Protection Capital LLC*,
  No. 13-cv-1685-GPC-NLS (S.D. Cal. Oct. 2, 2013) (Ex. H) .................................................................. 17

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  No. 12-CV-9350 VM KNF, 2015 WL 5730101 (S.D.N.Y. Sept. 10,
  2015) .................................................................. 3, 14

McKOOL SMITH, P.C.
AUSTIN, TX

*Maine v. U.S. Dep't of the Interior*,
    298 F.3d 60 (1st Cir. 2002)................................................................... 10

*Miller UK Ltd. v. Caterpillar, Inc.*,
    17 F. Supp. 3d 711 (N.D. Ill. 2014)..........................................passim

*Mondis Tech., Ltd. v. LG Elecs., Inc.*,
    No. 2:07-CV-565-TJW-CE, 2011 WL 1714304 (E.D. Tex. May 4,
    2011) .............................................................................................. 5, 13

*PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*,
    305 F.3d 813 (8th Cir. 2002) ............................................................ 10

*Piazza v. First American Title Ins. Co.*,
    No. 3:06 CV 765, 2007 WL 4287469 (D. Conn. Dec. 5, 2007) ....... 3, 14

*Potter v. United States*,
    No. 02-CV-0632-H (POR), 2002 WL 31409613 (S.D. Cal. July 26,
    2002) .............................................................................................. 18

*S.E.C. v. Schroeder*,
    No. C07-03798 JW HRL, 2009 WL 1125579 (N.D. Cal. Apr. 27,
    2009) .............................................................................................. 12

*Samuels v. Mitchell*,
    155 F.R.D. 195 (N.D. Cal. 1994) ..................................................... 12

*Sandra T.E. v. S. Berwyn Sch. Dist. 100*,
    600 F.3d 612 (7th Cir. 2010) ........................................................... 10

*Union Carbide Corp. v. Dow Chem. Co.*,
    619 F. Supp. 1036 (D. Del. 1985) ................................................... 18

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998) .......................................................... 11

*United States v. AT&T*,
    642 F.2d 1285 (D.C. Cir. 1980)........................................................ 12

*United States v. Deloitte LLP*,
    610 F.3d 129 (D.C. Cir. 2010).............................................. 10, 11, 13

McKool Smith, P.C.
Austin, TX

*United States v. Nobles*,
 422 U.S. 225 (1975) ............................................................................. 6

*United States v. Ocwen Loan Servicing, LLC*,
 No. 4:12-CV-543, 2016 WL 1031157 (E.D. Tex. Mar. 15, 2016) ............ 2, 3, 4, 15

*Walker Digital, LLC v. Google, Inc.*,
 No. 11-cv-309-SLR (D. Del. Feb. 12, 2013) (Ex. G) ............................... 13

*Westinghouse Elec. Corp. v. Republic of Philippines*,
 951 F.2d 1414 (3d Cir. 1991) ............................................................. 12

**OTHER AUTHORITIES**

Cal. Civ. R. 26.1 ................................................................................... 20

Fed. R. Civ. P. 26(b)(1) ......................................................................... 14

Fed. R. Civ. P. 26(b)(3) ............................................................... 7, 8, 10, 11

Jeff A. Anderson et al., *The Work Product Doctrine*, 68 CORNELL L. REV.
 760, 852–55 (1983) (Ex. F) ................................................................. 11

Binyamin Appelbaum, *Betting on Justice: Investors Put Money on
 Lawsuits to Get Payouts*, N.Y. Times, Nov. 15, 2010 (Ex. J) ................... 21

Courtney R. Barksdale, *All That Glitters Isn't Gold: Analyzing the Costs
 and Benefits of Litigation Finance* (Ex. I) ............................................. 20

Grace M. Giesel, *Alternative Litigation Finance and the Work-Product
 Doctrine*, 47 WAKE FOREST L. REV. 1083, 1084 (2012) (Ex. C) ............. 1, 21

Wright, Miller et al., 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.) ................. 9

MCKOOL SMITH, P.C.
AUSTIN, TX

## I.       INTRODUCTION

Plaintiff Odyssey Wireless, Inc. ("Odyssey") files this single response in opposition to the Motion to Compel filed by Defendants LG Electronics U.S.A., Inc., *et al.*, Apple Inc., Samsung Electronics Co., *et al.*, and Motorola Mobility LLC (collectively "Defendants"). On July 15, 2016, all Defendants except Apple filed a motion to compel; on July 19, 2016, Apple joined in the motion. Defendants requested that the Court compel production of Odyssey's agreements and communications with its ███████████████████████████████████████████████████████ ██████████████████████████████. Because these agreements and communications are irrelevant to Defendants' claims and are protected by the work-product doctrine and by attorney-client privilege, Defendants' motion should be denied.

Odyssey entered into an ████ ████ ███ ████ ██ ████ ███████████████████████████████████████████████████████ ████████████ Odyssey's Second Supplemental Privilege Log at Entry Nos. 1639–40. (Ex. A); Decl. of Dr. P. Karabinis (Ex. B). In 2013 and 2014, Odyssey entered into agreements with ███████████████████████ The entities are ████ ██████████: ███████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████

Enforcing a patent against multi-billion dollar corporations is a near-impossible task for most small inventors. ████████████████████████ help level the playing field and ensure that "the teams show up at the field with the same equipment." Grace M. Giesel, *Alternative Litigation Finance and the Work-Product Doctrine*, 47 WAKE

McKool Smith, P.C.
Austin, TX

McKool Smith, P.C.
Austin, TX

FOREST L. REV. 1083, 1084 (2012) (Ex. C).  Without a level playing field, "a defendant [that] enjoys substantial economic superiority, [ ] can, if it chooses, embark on a scorched earth policy and overwhelm its opponent." *Miller UK Ltd. v. Caterpillar, Inc.*, 17 F. Supp. 3d 711, 718 (N.D. Ill. 2014).

To enable these entities to fill this critical role, inventors must be able to protect communications with ███████████████████ Without such protection, the playing field is not level, and multi-billion dollar corporations can overwhelm small inventors in patent litigation, without regard to the merits of the case. It is imperative that ████████████ not be driven from their roles due to lack of privacy in those agreements and communications that are created in anticipation of litigation.

Whether or not communications and agreements between parties and ████ ██████ are discoverable is a relatively recent issue, as ████████████████ is a fairly new concept. However, it has quickly become well-settled that documents memorializing a ████████████████—as well as any communications or documents exchanged in furtherance of the transaction and in anticipation of litigation—are protected from discovery under the work-product doctrine. *E.g.*, *In re Int'l Oil Trading Co., LLC*, 548 B.R. 825, 832 (Bankr. S.D. Fla. 2016); *United States v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-543, 2016 WL 1031157, at *6 (E.D. Tex. Mar. 15, 2016); *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. S.A.*, No. CV 7841-VCP, 2015 WL 778846, at *9 (Del. Ch. Feb. 24, 2015); *Miller UK Ltd.*, 17 F. Supp. 3d at 731–38; *Doe v. Soc'y of Missionaries of Sacred Heart*, No. 11-cv-02518, 2014 WL 1715376, at *3–4 (N.D. Ill. May 1, 2014); *Devon IT, Inc. v. IBM Corp.*, No. 10-2899, 2012 WL 4748160, at *1 (E.D. Pa. Sept. 27, 2012). It likewise is well-settled that these transactions, and the documents and communications facilitating them, are irrelevant to the underlying litigation unless there is a compelling basis establishing relevance. *E.g.*, *Ashghari-Kamrani v. United Services Automobile Ass'n*, No. 2:15-

CV-478, at *12 (E.D. Va. May 31, 2016) (Ex. D); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350 VM KNF, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015); *Piazza v. First American Title Ins. Co.*, No. 3:06 CV 765, 2007 WL 4287469, at *1 (D. Conn. Dec. 5, 2007); *Miller UK Ltd.*, 17 F. Supp. 3d at 719, 721–24; *Ocwen Loan Servicing, LLC*, 2016 WL 1031157, at *6.

## II.    BACKGROUND

On June 23–24, 2016, Defendants deposed Dr. Peter Karabinis ("Dr. Karabinis"), the inventor of the patents-in-suit and principal of Odyssey. Karabinis Dep. (Ex. E) at 302:24–303:2. During the deposition, counsel for Defendants attempted to gain access to protected information about Dr. Karabinis's agreements and communications with ████████. *E.g.*, *id.* at 253:3–25. Dr. Karabinis was encouraged to answer "yes" or "no" where applicable but was directed not to reveal protected communications. *E.g.*, *id.* at 254:4–12.

Odyssey informed opposing counsel of the applicable work-product protection at the deposition in response to the improper questions. *Id.* Odyssey applied the doctrine when it (1) clawed back its agreement with ██████ and a draft e-mail from ██████████████████, and (2) instructed Dr. Karabinis not to disclose specifics of his deal documents and communications ████████████. *Id.* at 238:13–16, 277:9–13. Counsel for Defendants took issue chiefly with Odyssey's reclamation of the two documents through the use of this doctrine, and accordingly filed the motion before the Court along with memos in support thereof. Mot. to Compel at 1 (stating that the work-product protection was improperly applied to the documents clawed back). While Defendants' memo focuses on the two aforementioned documents, they request access to all of ██████████████ ████████████████████.

McKOOL SMITH, P.C.
AUSTIN, TX

1    Defendants seek to discover documents that are protected both by attorney-

2 client privilege and by the work-product doctrine, and which are irrelevant to their

3 claims. As such, their motion should be denied.

4    Odyssey's ███████████████████ are protected opinion and

5 fact work product, and are irrelevant to Defendants' claims or defenses. The

6 agreements were prepared because of contemplated litigation, and no waiver of the

7 protection occurred. Similarly, Odyssey's communications with ██████████ are

8 protected opinion work product because they were prepared in anticipation of legal

9 proceedings, and are irrelevant to Defendants' claims. The communications with

10 ████████████████ are also protected by attorney-client privilege. Odyssey's

11 disclosure of privileged information to the ████████████ did not waive the

12 existing privilege because it was disclosed in a manner consistent with both parties'

13 reasonable expectations that the information would remain confidential, and because

14 the parties share a qualifying common interest.

15 **III.   ARGUMENT**

16    **A.    ████████████████ Agreements and Communications are Protected
         Work Product.**

17

18    The jurisdictions that have considered and evaluated the issue of discovery into

19 ████████ ██████ have established that ████████████ ███████ and

20 communications are protected work product. *E.g.*, *In re Int'l Oil Trading Co., LLC*,

21 548 B.R. at 832 (finding litigation financier communications to be protected by

22 privilege and work product and finding that the funding agreement was protected

23 work product) (bankruptcy court in the Eleventh Circuit); *Ocwen Loan Servicing,*

24 *LLC*, 2016 WL 1031157, at *6 (finding litigation funding information is protected as

25 work product) (district court in the Fifth Circuit); *Carlyle Inv. Mgmt. LLC*, 2015 WL

26 778846, at *9 (finding that litigation funding agreements are litigation documents and

27

28

McKool Smith, P.C.
Austin, TX

therefore work-product protection is appropriate) (state chancery court in Delaware); *Miller UK Ltd.*, 17 F. Supp. 3d at 731–38 (finding work-product protection for documents given to litigation financier) (district court in the Seventh Circuit); *Doe v. Soc'y of Missionaries of Sacred Heart*, 2014 WL 1715376, at *3–4 (N.D. Ill. May 1, 2014) (finding work-product protection for plaintiffs' communication with and documents involving a litigation financier) (district court in the Seventh Circuit); *Devon IT, Inc.*, 2012 WL 4748160, at *1 (finding that both communications and agreements with litigation financiers constitute work product) (district court in the Third Circuit).

The work-product doctrine's purpose is to protect the integrity of adversarial proceedings by shielding documents prepared in anticipation of litigation, and by shielding the surrounding expression of thoughts and opinions. *Hickman v. Taylor*, 329 U.S. 495, 512–13 (1947). Odyssey's agreements and communications with ███████████████████ expressly contemplate litigation. The disclosure to the ███████ did not substantially increase the likelihood that the information would end up in adversarial hands, thus defeating the potential waiver of the protection. Defendants seek to strip the cover from properly protected litigation documents without justification. This basis alone is sufficient to deny Defendants' motion. *Mondis Tech., Ltd.*, 2011 WL 1714304, at *3 (holding that documents disclosed to potential litigation funders to aid in possible future litigation were protected work product and, as such, not finding a need to reach the attorney-client privilege issue).

    1.    <u>Work-product protects Odyssey's ███████████ and communications.</u>

The work-product doctrine exists to protect the area where a legal case is prepared and, contrary to Defendants' argument, it is not restricted solely to product created by the attorney. *United States v. Nobles*, 422 U.S. 225, 238 (1975). Much of

McKool Smith, P.C.
Austin, TX

McKool Smith, P.C.
Austin, TX

Defendants' motion is premised on the misguided assertion that work-product protection somehow applies only to matters directly involving an attorney. Mot. to Compel at 1–6, 7, 10. But, the protection of work product crucially extends to the attorney, the attorney's agents, the party itself, and the party's representatives. Fed. R. Civ. P. 26(b)(3)(A); *Nobles*, 422 U.S. at 238. Over forty years ago, the Supreme Court expanded the work-product doctrine to explicitly include any agents for the attorney, calling the doctrine an "intensely practical one, grounded in the realities of litigation in our adversary system." *Nobles*, 422 U.S. at 238. In addition, this concept of practical work product is codified in Rule 26(b)(3)(A), which supplies the protection to the party, as well:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial *by or for another party or its representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).

Fed. R. Civ. P. 26(b)(3)(A) (emphasis added). By the plain language of the statute, an attorney's work product is certainly protected, but so is the work product of the party and a whole host of the party's possible representatives. *Id*; *Canel v. Lincoln Nat. Bank*, 179 F.R.D. 224, 227 (N.D. Ill. 1998) (protecting the memorandum—prepared in anticipation of litigation—of a bank officer analyzing valuation methods for bank stock and possible exposure created by each method).

"[W]hether a document is protected depends on the motivation behind its preparation, rather than on the person who prepares it." *Caremark, Inc. v. Affiliated Computer Services, Inc.*, 195 F.R.D. 610, 615 (N.D. Ill. 2000). The involvement of an attorney is not required. Rather, as the statute and *Nobles* express, work product exists to shield materials not because they were prepared by a lawyer, but because they were prepared in anticipation of litigation by a party or the party's representatives. Defendants' attempt to cabin the scope of work-product protection to include only

McKool Smith, P.C.
Austin, TX

1    tangible documents created by attorneys and communications involving attorneys is
2    far more limiting than the statute supports.

3    Specifically in the context of ███████, communications between
4    parties and ███████ are protected. *In re Int'l Oil Trading Co., LLC*, 548 B.R. at
5    836 (finding that communications between a judgment creditor and his litigation
6    funder were protected opinion work product). Creation of materials by an attorney,
7    while common in ███████, is not required for work product
8    protection. The standard is, instead, precisely what is codified in Rule 26: materials
9    prepared in anticipation of litigation by or for a party or the party's representatives.

10   2.   Work-product protection is not restricted to documents and
11        tangible things.

12   Documents and tangible items prepared in anticipation of litigation by or for
13   another party or its representatives are, indeed, protected by the work-product doctrine
14   and are generally not discoverable. Fed. R. Civ. P. 26(b)(3); *In re Grand Jury
15   Subpoena*, 357 F.3d 900, 905 (9th Cir. 2004). However, work product is not limited
16   solely to the tangible; it also covers intangible thought processes and impressions.
17   *Hickman*, 329 U.S. at 512–13.

18   There are two chief categories of work product: opinion work product and fact
19   (or "ordinary") work product. *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977).
20   Ordinary work product—which contains facts, with no mental impressions—may be
21   discovered if there exists a showing of both substantial need and an inability to obtain
22   substantially equivalent materials without undue hardship. Fed. R. Civ. P. 26(b)(3).
23   Opinion work product—that is, the expression of mental impressions, opinions, and
24   analysis in anticipation of litigation—enjoys a much greater protection. *In re Murphy*,
25   560 F.2d at 336; *see Dir., Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124
26   F.3d 1304, 1307 (D.C. Cir. 1997) (calling opinion work product "virtually

27
28

1  undiscoverable"). It possesses "nearly absolute immunity and can be discovered only
2  in very rare and extraordinary circumstances." *In re Murphy*, 560 F.2d at 336 (citing
3  *Hickman*, 329 U.S. at 513). This is codified in the Federal Rules of Civil Procedure
4  where courts are instructed to "protect against disclosure of the mental impressions,
5  conclusions, opinions, or legal theories" if the court orders discovery of ordinary work
6  product. Fed. R. Civ. P. 26(b)(3).

7      Given the "virtually undiscoverable" nature of opinion work product,
8  Defendants' contention that work product extends only to documents and not to
9  questions about the documents is both illogical and mistaken. Mot. to Compel at 10.
10  As established, "work product protection extends to both tangible and intangible work
11  product." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 662 (3d Cir. 2003) (citing
12  *Hickman*, 329 U.S. at 512). Accordingly, work-product protection encompasses
13  intangibles, like the memory of the attorney or agents of the attorney, or the client, as
14  well as to oral statements not transcribed or recorded, and mental impressions and
15  thoughts about the case and the underlying legal principles and issues. *Gen-Probe Inc.*
16  *v. Becton, Dickinson & Co.*, Nos. 09cv2319, 10cv0602, 2011 WL 997189, at *2 (S.D.
17  Cal. Mar. 18, 2011) ("intangible work product remains protected"); *In re Grand Jury*
18  *Subpoena Dated Nov. 8, 1979*, 622 F.2d 933, 935 (6th Cir. 1980) (work-product
19  doctrine applies to "tangible and intangible material which reflects an attorney's
20  efforts at investigating and preparing a case"); *see also* Restatement (Third) of the
21  Law Governing Lawyers §87(1) (2000) ("Work product consists of tangible material
22  or its intangible equivalent in unwritten or oral form."); Wright, Miller et al., 8 Fed.
23  Prac. & Proc. Civ. §2024 (3d ed.) ("[I]ntangible work product includes thoughts and
24  recollections of counsel, [and] it is often eligible for the special protection accorded
25  opinion work product.").

26

27

McKool Smith, P.C.
Austin, TX

28

Thus, questioning a witness to reveal work-product protected mental impressions, conclusions, or other similar matters violates the work-product doctrine. *Gen-Probe Inc. v. Becton, Dickinson & Co.*, 2011 WL 997189, at *2 (witness interviews are protected work product) (citing *Garcia v. City of El Centro*, 214 F.R.D. 587, 591 (S.D. Cal. 2003). Dr. Karabinis was properly instructed during the deposition not to testify regarding the contents of protected documents or communications.

Likewise, the agreements between Odyssey and ████████████, along with the communications that anticipate litigation, are protected and were properly withheld. Both the agreements and the communications constitute opinion work product, the variation afforded near absolute protection from discovery. This is because, to the extent Defendants seek to discover matters related to ███████ ████████████, including the terms of the final agreements, those matters were prepared in anticipation of litigation and reflect analysis of the merits of the case. *E.g.*, *Carlyle Inv. Mgmt. LLC*, 2015 WL 778846, at *9 (applying work-product protection to litigation-funding materials, explaining that "the terms of the final agreement—such as the financing premium or acceptable settlement conditions—could reflect an analysis of the merits of the case"). The communications also fall under opinion work product. *In re Int'l Oil Trading Co., LLC*, 548 B.R. at 836 (finding communications between a client, the client's attorney, and a litigation funder "whose participation depends on assessments of the merits of litigation" to be opinion work product).

Moreover, even if the requested materials were ordinary work product, and not opinion work product, Defendants still did not demonstrate a substantial need for those materials or an undue hardship. As discussed below, *see* **Part B** *infra*, the sought-after discovery is irrelevant to any claim or defense in the case. There can be no substantial need for, or undue hardship in obtaining, irrelevant discovery.

MCKOOL SMITH, P.C.
AUSTIN, TX

3. <u>The withheld materials were prepared in anticipation of litigation.</u>

To qualify for work-product protection under Rule 26(b)(3), documents must have two characteristics: "(1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for another party or by or for that other party's representative.'" *In re California Pub. Utils. Comm'n*, 892 F.2d 778, 780–81 (9th Cir. 1989). When considering work product, the Ninth Circuit asks if, in light of the nature of the document and the factual situation of the particular case (a "totality of the circumstances" test), the document can be fairly said to have been prepared or obtained because of the prospect of litigation. *Richey*, 632 F.3d at 568.[1] This is certainly the case with the three agreements and the communications at hand: ██████

███████████████████████████████████████████████

███████████████████████. Decl. of Dr. P. Karabinis (Ex. B) at 1. ████████████ and communications by definition are prepared because of litigation, as ████████████████████████████

██████████████████████████ The agreements and communications between Odyssey and the ███████████████ also, naturally, are prepared by or for the party. The satisfaction of these two criteria qualifies the materials for work-product protection under the Ninth Circuit's standard.

Both the contracts themselves and the communications about the litigation are prepared with the expectation that the adversarial system will protect the information.

---

[1] Many other circuits ask whether the document or communication exists "because of" the anticipated litigation. *E.g.*, *In re Grand Jury Subpoena*, 357 F.3d at 907; *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010); *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010); *In re Prof'ls Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009); *PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP*, 305 F.3d 813, 817 (8th Cir. 2002); *Maine v. U.S. Dep't of the Interior*, 298 F.3d 60, 68 (1st Cir. 2002).

MCKOOL SMITH, P.C.
AUSTIN, TX

Defendants, then, seek to obtain precisely the kind of material that the work-product doctrine is designed to shield.

Defendants place a great deal of weight on the timing of the agreements, since litigation was not yet underway. Litigation is not required to be underway, or even imminent, under the applicable standard. "[T]he phrase 'in anticipation of litigation' includes materials prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Am. Civil Liberties Union of N. California v. Dep't of Justice*, 70 F. Supp. 3d 1018, 1029–30 (N.D. Cal. 2014) (quotation omitted). As mentioned, the type of agreements at issue here by definition are only contemplated and ultimately prepared because of a very real prospect of litigation.

Finally, it is of no moment that the agreements prepared in anticipation of litigation may have also served a business purpose, ████████████████████ ████████████████████████████████ *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998); *United States v. Deloitte LLP*, 610 F.3d 129, 138 (D.C. Cir. 2010) ("material generated in anticipation of litigation may also be used for ordinary business purposes without losing its protected status"); *Miller UK Ltd.*, 17 F. Supp. 3d at 735. The idea that work product should not extend to documents created in the ordinary course of business, even in anticipation of litigation, is widely criticized for adding an exception not listed in the rule. *See* Jeff A. Anderson et al., *The Work Product Doctrine*, 68 CORNELL L. REV. 760, 852–55 (1983) (stating that such an exception for business documents upsets the effective operation of Rule 26(b)(3)) (Ex. F).

### 4.   Odyssey did not waive work-product protection.

Contrary to Defendants' stance, disclosure to a third party does not automatically waive work-product protection. *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3d Cir. 1991). Waiver only occurs when the

McKOOL SMITH, P.C.
AUSTIN, TX

1    disclosure substantially increases the opportunity for potential adversaries to obtain

2    the information. *Samuels v. Mitchell*, 155 F.R.D. 195, 200 (N.D. Cal. 1994). That does

3    not happen when information is disclosed to a ███████████ *E.g.*, *Miller UK*

4    *Ltd.*, 17 F. Supp. 3d at 736. Further, there must be a "tangible adversarial relationship"

5    between the disclosing and receiving party before waiver occurs; such a relationship is

6    absent in ███████████████ *S.E.C. v. Schroeder*, No. C07-03798 JW HRL,

7    2009 WL 1125579, at *9 (N.D. Cal. Apr. 27, 2009) (citing *Merrill Lynch & Co. v.*

8    *Allegheny Energy, Inc.*, 229 F.R.D. 441, 447 (S.D.N.Y. 2004)); *see Miller UK Ltd.*, 17

9    F. Supp. 3d at 736.

10       But here, the parties did even more to ensure protection. Confidentiality clauses

11   and expectations of confidentiality demonstrate that the parties sought to avoid

12   potential adversaries obtaining the information. Decl. of Dr. P. Karabinis (Ex. B) at 1.

13   Even in the absence of confidentiality clauses, ███████████████████████

14   ███████████████████████████████████████ *Miller UK Ltd.*, 17

15   F. Supp. 3d at 738. The information exchanged in both the ███████████████

16   themselves and the related communications did not occur in such a way that it

17   substantially increased the chance an adversary may find it. Indeed, the very nature of

18   the agreements and communications—preparation for litigation—indicates an effort to

19   protect against disclosure to Defendants. The communications were private and

20   confidential, per the agreements, and were not disclosed under circumstances

21   "inconsistent with the maintenance of secrecy from the disclosing party's adversary."

22   *United States v. AT&T*, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

23       The conversations relating to the confidential agreements, inasmuch as they

24   dealt with anticipated litigation, were naturally expected to remain confidential as

25   well. Decl. of Dr. P. Karabinis (Ex. B) at 1. The D.C. Circuit found that if the

26   disclosing party has a reasonable basis for believing that the recipient would keep the

27

28

McKool Smith, P.C.
Austin, TX

1   disclosed material confidential—something that inventors certainly expect of those

2   ████████████████—then there is no conduit to the adversary. *United States*

3   *v. Deloitte LLP*, 610 F.3d 129, 140–41 (D.C. Cir. 2010). Accordingly, in the

4   ████████████ the disclosure of information to facilitate the █████

5   ████████ does not waive work-product protections. *Walker Digital, LLC v. Google,*

6   *Inc.*, No. 11-cv-309-SLR (D. Del. Feb. 12, 2013) (Ex. G); *Mondis Tech., Ltd. v. LG*

7   *Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4,

8   2011). Defendants make no effort to link disclosure to ████████████ with

9   disclosure to possible adversaries.

     Here, Defendants assert that "any work product protection . . . would have been

10   waived by virtue of their disclosure to independent third parties." Mot. to Compel at

11   12. Defendants fail to identify an "independent third party." In any event, Defendants

12   cite a case from this Court to attempt to support this proposition, but even the excised

13   portion quoted (requiring the adversarial element) does not lead to Defendants'

14   conclusion. *Id.* at 12–13 (citing *Pulse Eng'g, Inc. v. Mascon, Inc.*, No. CIV.

15   08CV0595JM(AJB), 2009 WL 3234177, at *4 (S.D. Cal. Oct. 2, 2009). Moreover, the

16   language in *Pulse Eng'g* immediately preceding the portion Defendants cite reads:

17   "The work product privilege is *not automatically waived by any disclosure to third*

18   *persons*. Rather, the courts generally find a waiver of the work product privilege only

19   if the disclosure 'substantially increases the opportunity for potential adversaries to

20   obtain the information.'" *Id.* (emphasis added). Defendants' selectively quoted citation

21   does not support their position, but undermines it.

22   **B.   Odyssey's ████████████████████ and Communications**
        **are Irrelevant to Defendants' Claims.**

23        Discovery has necessary boundaries and limitations, "one of which comes into

24   existence when inquiry touches upon the irrelevant." *Hickman*, 329 U.S. at 507–08

McKool Smith, P.C.
Austin, TX

1  (1947). Relevance in discovery proceedings is a function of the claims or defenses of

2  the parties, and the requested discovery must be proportional to the needs of the case.

3  Fed. R. Civ. P. 26(b)(1). Defendants—who already know the existence and identities

4  of the ███████—fail to meet both burdens in their motion.

5                    1.        ███████████████ is irrelevant to the underlying litigation.

6        Numerous courts have held that information about ████████████ is

7  irrelevant, and thus undiscoverable for that independent reason, as well. *Ashghari-*

8  *Kamrani*, No. 2:15-CV-478, at *12 (concluding, in a patent-infringement suit,

9  "Defendant is not entitled to discovery about Plaintiffs' litigation funding" because

10  such discovery is irrelevant); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-

11  9350 VM KNF, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (denying a

12  motion to compel production of "contracts, litigation funding agreements, other

13  similar documents executed between their counsel and third parties relating to this

14  case, and correspondence with those funders or third parties about this case" because

15  "the defendants provided no non-speculative basis"); *Piazza v. First American Title*

16  *Ins. Co.*, No. 3: 06 CV 765, 2007 WL 4287469, at *1 (D. Conn. Dec. 5, 2007) (finding

17  that a fee agreement was not discoverable because it was irrelevant).

18        In *Miller UK Ltd.*, for example, discovery was sought concerning the amount of

19  money sought or received by Miller, the details of its funding agreement, and how

20  much the funder would receive if Miller won the case. *Miller UK Ltd.*, 17 F. Supp. 3d

21  at 719, 721–24. That information, the court held, was irrelevant. *Id*. at 724 (stating that

22  litigation-funding documents were not relevant and were therefore undiscoverable).

23  The court in *Ocwen Loan Servicing* applied the same principle, because when a

24  litigation funder will not be a witness in a case and the amount the financing entity

25  may receive from a case is not at issue, documents relating to the litigation funder are

26  simply not relevant or discoverable. *Ocwen Loan Servicing, LLC*, 2016 WL 1031157,

McKool Smith, P.C.
Austin, TX

28
27

at *6.

   Generally, information about a ███████████████ is only discoverable (assuming there exists no work-product protection or attorney-client privilege) if the requesting party has an actual basis for why the information would be relevant. *Ashghari-Kamrani*, No. 2:15-CV-478, at *9 ("Information about a party's litigation funding is only relevant (and ultimately discoverable) if the requesting party has an actual basis for the relevancy of the information other than mere speculation or fishing."). The mere fact that the underlying suit involves patent litigation provides no "actual basis for the relevancy of the information." *Id.* In *Ashghari-Kamrani*, discovery into a litigation-funding agreement was sought on the basis that "a third party [with] a financial interest in this case" supposedly will "have knowledge regarding the patents at issue," including "evaluations of . . . the patent in suit." *Id.* (quotations omitted). The court held, however, that possession of a financial interest in a case provides no more than a "wholly speculative" basis to argue that a third-party investor "would have relevant and discoverable information" of any nature about the patents-in-suit. *Id.*

   Defendants here likewise offer no more than "speculation or fishing" and a "wholly speculative" relevance argument when they attempt to link ███████████ to evidence about damages in a patent suit. This is insufficient.

                    2.        ███████████████  is irrelevant to damages.

   Apple argues that Defendants "expect" that ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████  Apple Joinder at 1 (stating that the terms "██████ ████████████████████████████████████████████████ ██████" and can be "█████████████████████████████████████████").

MCKOOL SMITH, P.C.
AUSTIN, TX

This constitutes either a fishing expedition (as no Defendant provides any basis for the ████████████████████████████████, or even of finding ██████████████ ████████████████████████, or an impermissible attempt to garner protected information. Any discussion of the value of the patents would be "virtually undiscoverable" opinion work product as well as attorney-client privileged communication. *Dir., Office of Thrift Supervision*, 124 F.3d at 1307. Additionally, Apple seeks to discover an assessment of the case by the party and a legally interested entity, the ████████████ this falls squarely under opinion work product. *Id.*; *Carlyle Inv. Mgmt. LLC*, 2015 WL 778846, at *9 (protecting litigation funding agreements as work product because the final agreement could reflect an analysis of the merits of the case).

Samsung, LG, and Motorola simply argue that the ██████████████—again, *not* the communications—might be relevant to damages. Mot. to Compel at 13. Defendants seek to invoke the *Georgia-Pacific* factors, which are "relevant . . . to the determination of the amount of a reasonable royalty for a patent license." *Georgia-Pacific Corp. v. United States*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971). But *Georgia-Pacific* reinforces that the ████████ ██████████████ ██████████ are irrelevant to damages. *Georgia-Pacific* never once addresses ██████████ ████████, even in dicta. Instead, the *Georgia-Pacific* reasonable-royalty factors provide that *royalties* from patent licensing and *actual patent sales* can inform how a patent is valued. *Id.* at 1120. ████████████████████████████████████████████████ ██████████.

Defendants are particularly concerned about *Georgia-Pacific* factors 1 and 4. Mot. to Compel at 13. Factor 1 concerns the royalties received for licensing; factor 4 concerns a licensor's policy and program to not license or license under special

McKool Smith, P.C.
Austin, TX

McKool Smith, P.C.
Austin, TX

1   conditions. *Georgia-Pacific Corp.*, 318 F. Supp. at 1120. The ████████ at

2   issue ████████████████████████████████████████████████████████

3   ██████████████████. An attempted application of the *Georgia-Pacific* factors to the

4   ████████████ is a gross misapplication, as none of the factors that inform the

5   patent valuation are present. ██████████████████████████████████████

6   ██████████ are no more relevant to alleged damages as would be a decision to invest in a

7   wrongful-death case.[2]

8       The burden is on Defendants to show the relevance of each requested document

9   or communication to its claims. *Miller UK Ltd.*, 17 F. Supp. 3d at 721 (stating that

10  demonstrating relevance to claims and defenses is required by Rule 26 as a

11  precondition to discovery). Defendants did not—and cannot—do so. Even if the

12  clawed back ████████ ████████ and communications are not entitled to work-product

13  protection, the agreement and communications are not relevant to any claim or

14  defense. The same is true of the ████████████ agreements and communications.

15      **C.    Attorney-Client Privilege Protects ████████████**

16      **Communications.**

17      Attorney-client privilege serves as an encouragement to clients to make full

18  disclosure to their attorneys. *Potter v. United States*, No. 02-CV-0632-H (POR), 2002

19  WL 31409613, at *5 (S.D. Cal. July 26, 2002). The privilege covers the client's

20  communications, the attorney's advice in response, and extends to advisory papers

21

22  _____
    [2] The present case is thus distinguishable from *Intel Corp. v. Protection Capital LLC*,

23  No. 13-cv-1685-GPC-NLS (S.D. Cal. Oct. 2, 2013) (Ex. H), where Intel requested
    valuation documents from an entity that funded a patent purchase, as opposed to

24  funding litigation. Unlike here, the *Intel* patents were outright purchased by the
    litigation entity's affiliate; there was no outside litigation funding in that case. In *Intel*,

25  limited discovery was allowed to verify the actual valuation of patents as reflected in
    the outright purchase of the patents at a particular price. Because of these very

26  different circumstances, the *Intel* court had no occasion to address—and did not
    address—either the work-product privilege or the attorney-client privilege, two

27  independent grounds for prohibiting discovery here.

28

McKool Smith, P.C.
Austin, TX

prepared by a third party if the papers are based on and would tend to reveal the client's confidential communications. *Id.* The common-interest doctrine further protects attorney-client communications involving a third-party if the parties have an expectation that information disclosed will remain confidential. *Citizens for Ceres v. Superior Court*, 217 Cal. App. 4th 889, 915 (2013). Because attorneys are involved in Odyssey's communications with ███ ███ ████████, and because the communications reflect attorney-client privileged information, the communications are protected. Because Odyssey and ██████████████ share a common legal interest as defined by the Ninth Circuit, the privilege is not waived.

The Ninth Circuit led the development of the common-interest exception. *In re Mortgage & Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal. 1997); *see Hunydee v. United States*, 355 F.2d 183, 185 (9th Cir. 1965). The rule began as a privilege for joint defendants, but "its broader contours have long been apparent." *In re Mortgage & Realty Trust*, 212 B.R. at 653. California courts tend to follow a "common legal interest" test and require that the communication be made by separate parties in the course of a matter of common legal interest, with the communication designed to further that effort. *Id.*; *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 309 (N.D. Cal. 1987) (citing *Union Carbide Corp. v. Dow Chem. Co.*, 619 F. Supp. 1036, 1047 (D. Del. 1985)). The exception applies "irrespective of litigation begun or contemplated." *In re Mortgage & Realty Trust*, 212 B.R. at 653 (citing *Cont'l Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964)). In particular, California courts have found "where the disclosure was in fact voluntary but not intended to create a waiver . . . one should look at the explicit or implicit undertaking by the recipient of the information to hold it in confidence." *Hewlett-Packard Co. v. Bausch & Lomb, Inc.*, 115 F.R.D. 308, 311 (N.D. Cal. 1987). As previously discussed, *see* **Part A.4** *supra*, the confidentiality expectations, confidentiality clauses, and business

interactions of Odyssey and the ████████████ all manifest a clear intent to keep the information private. Decl. of Dr. P. Karabinis (Ex. B) at 1.

Applying the waiver exception to ████████████ is in keeping with the intent of the common-interest doctrine: to protect the ability of parties with aligned legal interests to share communications relevant to their mutual investment in the case. *E.g.*, *In re Int'l Oil Trading Co., LLC*, 548 B.R. at 833 (finding that the common-interest exception protected communications between a client and its litigation financier); *Devon IT, Inc.*, 2012 WL 4748160 at *1 (finding that disclosure of communications between a client and its litigation financier "would intrude upon attorney-client privilege under the 'common-interest' doctrine").

If a client cannot disclose privileged information to ████████████ without abandoning the privilege, the client's ability to engage in such agreements is severely hindered. *In re Int'l Oil Trading Co., LLC*, 548 B.R. at 833 (stating that the client's disclosures to the litigation financier were necessary to obtain informed legal advice, were for the purpose of assisting their common cause, and that cause was to conduct litigation; therefore, the privilege remained). The existence of this privilege and lack of waiver through disclosure to a third party is independently sufficient to justify a denial of Defendants' motion as to ████████████.

## D. Defendants' "Catch-All" Request for Relief is Vague and Insufficient.

Defendants' request for "similar documents that Odyssey has improperly withheld from production under the work produce [*sic*] doctrine" (Mot. to Compel at 17) is overly vague. Defendants appear to be asking for documents similar to the clawed back documents (the ████████████ agreement and the draft e-mail to a ████████████), but fail to define what their specific request entails or

MCKOOL SMITH, P.C.
AUSTIN, TX

point to any entries in Odyssey's Privilege Log. Defendants also provide no argument as to what constitutes a "similar" document.[3]

Defendants bring before the Court two documents—the ██████ ████████ and a draft e-mail ████████████—and attempt to leave with every agreement and piece of correspondence.

### E.   Denying Protection to ████████████ Would Deprive Small Inventors of Their Right to Litigate.

The Constitution grants inventors the right to exclude others from using their inventions.  To effectuate this vital goal, Congress established the Patent Office to grant inventors rights for new, useful, nonobvious inventions, such as the patents-in-suit.  But, being awarded a patent is of limited value without the ability to enforce rights of exclusivity that come with the intellectual property.

Plaintiffs often face wealthy defendants who can afford to out-wait or out-spend their smaller adversaries. Courtney R. Barksdale, *All That Glitters Isn't Gold: Analyzing the Costs and Benefits of Litigation Finance,* 26:3 Tex. Rev. Litig. 707, 734 (2007) (Ex. I). Fewer places is this truer than in patent litigation, when a small inventor faces a multi-billion dollar corporation. Large companies can ignore, intimidate, and disregard small inventors and use their inventions without compensating the inventor with a reasonable royalty. ████████████ increase the likelihood that cases will be decided by merit, rather than resources, since they allow small inventors to enforce their patent rights, even if doing so requires protracted,

---

[3] Further, Defendants failed to satisfy the meet and confer requirements of this Court. The local rules state that "[t]he court will entertain no motion pursuant to Rules 26 through 37, Fed. R. Civ. P., unless counsel will have previously met and conferred concerning all disputed issues. . . . If counsel have offices in different counties, they are to confer by telephone." S.D. Cal. Civ. R. 26.1. By failing to meet and confer and proceeding to file a vague motion, Defendants waste the Court's time.

McKOOL SMITH, P.C.
AUSTIN, TX

1   costly litigation. Binyamin Appelbaum, *Betting on Justice: Investors Put Money on*
2   *Lawsuits to Get Payouts*, N.Y. Times, Nov. 15, 2010 (Ex. J).

3       Finding that there exists no protection for ███████████ would undermine
4   the ███████████████ and those who use it, including individual "garage"
5   inventors, small companies, research organizations, and universities. ███████
6   ███████ would have to enter every agreement and conduct every communication
7   knowing that the value of the very litigation they are contemplating may be
8   dramatically reduced or destroyed. Grace M. Giesel, *Alternative Litigation Finance*
9   *and the Work-Product Doctrine*, 47 WAKE FOREST L. REV. 1083, 1086 (2012) (Ex. C).
10   At the same time, inventors and their attorneys will be much less inclined to share
11   their work, thoughts, and other materials with █████████████ if all of
12   the agreements and communications are *de facto* unprotected. *Id*. To maintain small
13   inventors' ability to challenge big corporations in federal court, the presence and
14   functionality of █████████████ must be protected.

15

16   **IV.   CONCLUSION**

17       For the foregoing reasons, Defendants' Motion to Compel should be denied.

18
19
20
21
22
23
24
25
26
27

MCKOOL SMITH, P.C.
AUSTIN, TX

28

1 Dated: August 1, 2016                    Respectfully submitted,

2                                          MCKOOL SMITH, P.C.

3

4                                          By *John B. Campbell*
                                           John B. Campbell
5

6                                          Attorney for Plaintiff
                                           ODYSSEY WIRELESS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MCKOOL SMITH, P.C.
AUSTIN, TX

1

## CERTIFICATE OF SERVICE

2        The undersigned hereby certifies that a true and correct copy of the foregoing

3   document has been served on this date to all counsel of record who are deemed to

4   have consented to electronic service via the Court's CM/ECF system per CivLR

5   5.4(d). Any other counsel of record will be served by electronic mail, facsimile and/or

6   overnight delivery upon their appearance in this matter.

7        I declare under penalty of perjury of the laws of the United States that the

8   foregoing is true and correct. Executed August 1, 2016 at Austin, Texas.

9

10

11                                         *John B. Campbell*
                                           John B. Campbell

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28