1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ODYSSEY WIRELESS, INC.,<br>                    Plaintiff,<br>          v.<br>SAMSUNG ELECTRONICS CO.,<br>LTD, et al.,<br><br>                    Defendants. | Case No.  3:15-cv-01738-H (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL [ECF NO. 268]** |
| ODYSSEY WIRELESS, INC.,<br>                    Plaintiff,<br>          v.<br>LG ELECTRONICS, INC., et al.,<br><br>                    Defendants. | Case No.  3:15-cv-01743-H (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL [ECF NO. 212]** |
| ODYSSEY WIRELESS, INC.,<br>                    Plaintiff,<br>          v.<br>APPLE INC.,<br>                    Defendant. | Case No.  3:15-cv-01735-H (RBB)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART JOINDER IN MOTION TO COMPEL [ECF NO. 224]** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

On July 15, 2016, Defendants filed a "Motion to Compel Materials Odyssey Withheld and Clawed Back Under the Work Product Doctrine" (the "Motion to Compel") with a Memorandum in Support of Its Motion, a declaration of Christopher W. Kennerly, and several exhibits [ECF No. 268].[1]  Plaintiff Odyssey Wireless, Inc. filed "Plaintiff Odyssey's Brief in Opposition to Defendants' Motion to Compel" (the "Opposition") with a declaration of Lindsay Leavitt and several exhibits on August 1, 2016 [ECF No. 279].  Odyssey also filed a "Notice of Supplemental Authority in Support of its Opposition to Defendants' Motion to Compel" on August 5, 2016 [ECF No. 284].  On August 8, 2016, Defendants filed a Reply with a declaration of Christopher W. Kennerly and multiple exhibits [ECF No. 288].  For the reasons stated below, Defendants' Motion to Compel [ECF No. 268] is **GRANTED in part and DENIED in part**.

## I.  FACTUAL BACKGROUND

Plaintiff filed its lawsuit against Defendants on August 29, 2014, in the United States District Court for the Eastern District of North Carolina [ECF No. 1].  Odyssey alleges that Dr. Peter D. Karabinis is the owner by assignment of six patents issued by the

//

//

//

//

---

[1]  The term "Defendants" refers to the Defendants in the above three related actions.  In each of the cases, Defendants have filed a motion to compel or a joinder in motion to compel.  See Odyssey Wireless, Inc. v. Samsung Electronics, Co., 15cv1738-H (RBB) (S.D. Cal. filed July 15, 2016) (motion to compel); Odyssey Wireless Inc. v. LG Electronics USA, Inc., 15cv1743-H (RBB) (S.D. Cal. filed July 15, 2016) (motion to compel); Odyssey Wireless, Inc. v. Apple, Inc., 15cv1735-H (RBB) (S.D. Cal. filed July 19, 2016) (joinder in motion to compel).  The disputes are largely identical, and the parties raise the same arguments for granting and opposing the motions.  Accordingly, although this order disposes of all three motions, the Court cites only to the moving papers in Odyssey Wireless, Inc. v. Samsung Electronics, Co., 15cv1738-H (RBB).

U.S. Patent and Trademark Office.  (Am. Compl. 3-4, ECF No. 37.)[2]  Karabinis holds a Ph.D. in electrical engineering and is the inventor of the inventions disclosed and claimed in the six patents.  (Id. at 5.)  These inventions are implemented in the "3GPP LTE Standard," which increases network capacity, data rates, and spectrum flexibility in mobile devices.  (Id. at 6.)  Plaintiff complains that Defendants have directly and indirectly infringed the six patents by "making, using, selling and offering to sell . . . certain mobile communication devices that support 4G LTE connectivity."  (Id.)

## II.  PROCEDURAL BACKGROUND

Defendants answered Odyssey's Amended Complaint on December 29, 2014 [ECF No. 41].  They filed a motion to transfer the litigation to the Southern District of California [ECF No. 53], which was granted on July 31, 2015 [ECF No. 91].  Defendants filed a Motion to Dismiss due to Odyssey's Lack of Standing [ECF No. 226], which Judge Huff denied on June 30, 2016 [ECF No. 256].

On June 23 and 24, 2016, while the Motion to Dismiss was pending, Defendants deposed Karabinis.  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 6, ECF No. 268.)  Multiple times during the deposition, Odyssey's counsel instructed Karabinis not to answer questions regarding communications and agreements with investors and potential investors in Plaintiff on the basis that this information was protected by the work-product doctrine.  (Id. at 6-10.)  Odyssey's counsel additionally clawed back two documents concerning investments or potential investments by third parties in the

//

//

//

---

[2] The Court will cite to all documents using the page numbers assigned by the Court's electronic case filing system.  Because the parties were given permission to file their moving papers under seal [ECF Nos. 271, 281, 293], the Court cites to the publicly-filed redacted versions of these documents.

predecessor to Plaintiff on the basis of the work-product doctrine.  (Id. at 6 (footnote omitted).)  Defendants filed the Motion to Compel on July 15, 2016 [ECF No. 268].[3]

### III.  LEGAL STANDARDS

It is well established that a party may obtain discovery regarding any nonprivileged matter that is relevant to any claim or defense and proportional to the needs of the case.  Fed. R. Civ. P. 26(b)(1).  Relevant information need not be admissible at trial to be discoverable.  Id.  Relevance is construed broadly to include any matter that bears on, or reasonably could lead to other matters that could bear on, any issue that may be in the case.  See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 350-51 (1978) (footnote omitted) (discussing relevance to a claim or defense, although decided under the 1978 version of Rule 26 that authorized discovery relevant to the subject matter of the action (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947))).  Rule 37 of the Federal Rules of Civil Procedure enables the propounding party to bring a motion to compel responses to discovery.  Fed. R. Civ. P. 37(a)(3)(B).  The party opposing discovery bears the burden of resisting disclosure.  Miller v. Pancucci, 141 F.R.D. 292, 299 (C.D. Cal. 1992).

### IV.  DISCUSSION

Defendants contend that "[t]he testimony and documents at issue concern market transactions regarding the patents-in-suit, which relate directly to the proper valuation of the patents-in-suit and contradict the massive damages awards Odyssey is seeking."  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 6, ECF No. 268.)  They argue that the work-product doctrine does not apply to the testimony and documents in dispute, and

---

[3]  Plaintiff states in a footnote in its Opposition that Defendants failed to meet and confer prior to bringing the Motion to Compel.  (See Opp'n 27 n.3, ECF No. 279.)  Ordinarily, the failure to meet and confer is a sufficient basis for denying a motion to compel.  From the deposition transcript provided, it appears that at best there was a minimal meet-and-confer effort that occurred on the record.  For this reason, the Court will address the merits of Defendants' Motion to Compel.  The Court cautions Defense counsel, however, that the failure to meet and confer before filing future discovery motions may result in their denial.

4

they ask that Plaintiff be compelled to produce Karabinis for deposition and to produce the clawed back documents and any other similar documents Odyssey has withheld under the work-product doctrine.  (Id.)  Defendants explain that "none of the questions sought testimony that would risk revealing mental impressions, conclusions, opinions or legal theories of an attorney.  Instead, they related to discussions or written communications between Karabinis and independent third parties regarding potential investments by those third parties in Odyssey."  (Id.)

Plaintiff responds that because the "agreements and communications are irrelevant to Defendants' claims and are protected by the work-product doctrine and by attorney-client privilege, Defendants' motion should be denied."  (Opp'n 8, ECF No. 279.)  Odyssey maintains that its "agreements were prepared because of contemplated litigation, and no waiver of the protection occurred."  (Id. at 11.)  It also asserts that its communications "are protected opinion work product because they were prepared in anticipation of legal proceedings, and are irrelevant to Defendants' claims."  (Id.)  Plaintiff further argues that these communications are protected by the attorney-client privilege.  (Id.)

In the Reply, Defendants reiterate that Odyssey has failed to show that the work-product doctrine applies.  (Reply 6, ECF No. 288.)  "Because of this, and further because Defendants have demonstrated a substantial need for the materials in their cases, Defendants' motion to compel should be granted."  (Id.)  They also assert that because Odyssey did not raise the attorney-client privilege at the deposition, the objection has been waived.  (See id. at 15.)

At the outset, the Court has reviewed the relevant portions of the sealed deposition transcript of Karabinis.  Nowhere in those portions of the transcript did Plaintiff's counsel object to the questions at issue on the basis of attorney-client privilege.  As a result, this objection has been waived.  See Cason-Merenda v. VHS of Michigan, Inc., No. 06–15601, 2013 WL 5449159, at *3 (E.D. Mich. Sept. 30, 2013) (footnote omitted) ("[A] failure to object to deposition questions or testimony on grounds of attorney-client

privilege operates to waive a claim of privilege as to this testimony." (citing Donaggio v. Arlington Cty., 880 F. Supp. 446, 451 n.5 (E.D. Va. 1995))).

     The Plaintiff argues at length that the requested information is "irrelevant to the underlying litigation" and "irrelevant to damages." (See Opp'n 21-24, ECF No. 279.) It also asserts that the discovery sought is not "proportional to the needs of the case." (Id. at 21.) The Defendants, on the other hand, claim that "the withheld discovery is not only relevant, but it is important." (Reply 11, ECF No. 288.) Odyssey's attorney did not object to Defendants' questions on the basis of relevance. Indeed, unlike an objection based upon attorney-client privilege, a relevance objection was not required.

     "Because most objections, such as those grounded on relevance or materiality, are preserved for trial, they need not be made at the deposition . . . ." 7 James Wm. Moore, et al., Moore's Federal Practice § 30.43[1], at 30-87 (3d ed. 2016) (footnote omitted); see also United States v. Irvin, 127 F.R.D. 169 170 n.2 (C.D. Cal. 1989) (noting that "relevance objections generally are preserved and need not be asserted during a deposition[]"). Accordingly, the Court will address the work-product and relevance objections.

     Federal Rule of Civil Procedure 26(b)(3) states that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). Nevertheless, those materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Id. But even when substantial need for work-product has been shown, the Court must still "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The burden is on the party claiming the privilege to establish that the withheld documents are protected from discovery by the attorney work-product doctrine.  See 6 James Wm. Moore et al., Moore's Federal Practice, § 26.70[5][a], at 26-454 (3d ed. 2016) (footnote omitted).  "[T]he party seeking work product protection must establish that the material is a document or tangible thing prepared in anticipation of litigation for that party."  Id. at 26-454-55 (footnote omitted).  "A mere allegation that the work product rule applies is insufficient to invoke its protection."  Id. at 26-455 (footnote omitted).  Rather, "[t]he protection applies 'if the prospect of litigation is identifiable because of specific claims that have already arisen.'"  QST Energy, Inc. v. Mervyn's, No. C-00-1699MJJEDL, 2001 WL 777489, at *5 (N.D. Cal. May 14, 2001) (quoting Conner Peripherals, Inc. v. W. Digital Corp., No. C93–20117 RMW/EAI, 1993 WL 726815 at *4 (N.D. Cal. June 8, 1993)).  "The test is whether 'the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'"  Id.

Defendants seek an order compelling (1) the production of the clawed back and similar documents withheld from production under the work-product doctrine and (2) the production of Karabinis for a continued deposition.  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 6, ECF No. 268.)  The Court addresses these requests separately.

## A.   Documents

### 1.   Applicability of the work-product doctrine

In the Motion to Compel, Defendants contend that the documents Odyssey clawed back are not protected by the work-product doctrine because they were not prepared in anticipation of litigation or trial.  (Id. at 15.)  "To the contrary, both of the documents Odyssey clawed back were created before any of the patents-in-suit had even issued."  (Id. (citation omitted).)  Defendants assert that based on the admissions of Karabinis, there was no more than a remote possibility of litigation.  (Id. at 15-16 (footnote omitted) (quoting Conner Peripherals, Inc., 1993 WL 726815, at *4).)  They maintain that disclosure of these two documents would not cause harm to the policy objectives that the work-product doctrine was designed to serve.  (Id. at 16 (citations omitted).)

15cv1738-H (RBB)

> There simply are no mental impressions, conclusions, opinions or legal theories of any agency or attorney in the documents, let alone any that relate to any specific, ongoing or prospective case or cases. Indeed, both documents at issue were prepared before litigation counsel was even retained. Further, neither document was prepared by legal counsel.

(Id. (citations omitted).) Defendants request that Plaintiff be ordered to reproduce these documents, "as well as to produce any similar documents that Odyssey has improperly withheld from production under the work product doctrine." (Id. at 17 (footnote omitted).)

Plaintiff responds that the courts that have considered similar documents and communications have concluded that they are protected by the work-product doctrine. (Opp'n 11, ECF No. 279 (citations omitted).) Odyssey cites a number of cases where courts purportedly found that agreements and communications regarding litigation funding and financing were protected work product. (Id. at 11-12 (citations omitted).) Plaintiff urges that the agreements and communications "expressly contemplate litigation." (Id. at 12.) Odyssey contends that Defendants' Motion to Compel "is premised on the misguided assertion that work-product protection somehow applies only to matters directly involving an attorney." (Id. at 13 (citation omitted).) Plaintiff explains that this protection extends "to the attorney, the attorney's agents, the party itself, and the party's representatives." (Id. (citing Fed. R. Civ. P. 26(b)(3)(A); United States v. Nobles, 422 U.S. 225, 238 (1975).)

Odyssey further asserts that both the communications and the agreements in dispute are opinion work-product because they were prepared in anticipation of litigation and reflect the merits of the case. (Id. at 16 (citations omitted).) Plaintiff explains that "[b]oth the contracts themselves and the communications about the litigation are prepared with the expectation that the adversarial system will protect the information." (Id. at 17.) Odyssey contends that it does not matter that litigation was not yet underway at the time of the agreements because "the type of agreements at issue here by definition are only

15cv1738-H (RBB)

contemplated and ultimately prepared because of a very real prospect of litigation." (<u>Id.</u> at 18.)

Defendants counter that "Odyssey did not address facts regarding the specific discovery at issue, as required by the case law, such as whether an attorney was involved, whether an attorney had been engaged, and whether an actual, foreseeable litigation had been contemplated." (Reply 6-7, ECF No. 288.)  They maintain that there is no support for the argument that the agreements were prepared because of a real prospect of litigation. (<u>Id.</u> at 7.)  "The agreements at issue bear little resemblance to those in the cases relied on by Odyssey, many of which came into existence after litigation had already started or included litigation preparation materials." (<u>Id.</u> (citations omitted).) Defendants argue that unlike the work-product in the cases cited by Plaintiff, "Odyssey has failed to demonstrate that the instant agreements, the clawed back documents, and any other related materials contain any evidence of actual litigation preparation or even the involvement of an attorney – much less an attorney's opinions or mental processes." (<u>Id.</u> at 8 (citing <u>Largan Precision Co. v. Genius Elec. Optical Co.</u>, Case No. 13–cv–02502–JD, 2015 WL 124557, at *5-6 (N.D. Cal. Jan. 8, 2015).)  They further assert that the admissions of Karabinis support a finding that these documents were not prepared in anticipation of litigation. (<u>Id.</u> at 8-9 (citations omitted).)  Defendants moreover dispute that it is well-settled that litigation funding agreements are protected from discovery under the work-product doctrine. (<u>Id.</u> at 9.)  "Tellingly, Odyssey has cited no controlling precedent on this issue.  Rather, Odyssey has instead relied on the holdings of distant chancery and bankruptcy courts, and decisions from the Fifth and Eleventh Circuits, which use different standards in applying the privilege." (<u>Id.</u>)

Although there is a dearth of case law regarding the applicability of the work-product doctrine to litigation funding documents, the district courts that have addressed this issue have found this protection applicable.  <u>See</u> <u>United States v. Homeward Residential, Inc.</u>, CASE NO. 4:12-CV-461, 2016 WL 1031154, at *6 (E.D. Tex. Mar. 15, 2016) ("The Court finds that the litigation funding information is protected by the work

product doctrine.  The litigation funding documents were between Fisher and actual or potential litigation funders and were used to possibly aid in future or ongoing litigation."); United States v. Ocwen Loan Serv., LLC, CASE NO. 4:12-CV-543, 2016 WL 1031157, at *6 (E.D. Tex. Mar. 15, 2016) (same); Doe v. Soc'y of Missionaries of Sacred Heart, No. 11–cv–02518, 2014 WL 1715376, at *3 (N.D. Ill. May 1, 2014) ("[T]the Financing Materials identified by Plaintiff in his privilege log constitute opinion work product.  These materials incorporate opinions by Plaintiff's counsel regarding the strength of Plaintiff's claims, the existence and merit of certain of Defendants' defenses, and other observations and impressions regarding issues that have arisen in this litigation."); Mondis Tech., Ltd. v. LG Elecs., Inc., Civil Action Nos. 2:07–CV–565–TJW–CE, 2:08–CV–478–TJW, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) ("All of the documents were prepared . . . with the intention of coordinating potential investors to aid in future possible litigation.  The Court holds that these documents are protected by the work product protection.").  The same rationale applies here.

Having reviewed the sealed declaration by Karabinis, the sealed privilege log, and the Defendants' position on them, the Court finds that the clawed back documents were prepared in anticipation of litigation.  See Fed. R. Civ. P. 26(b)(3)(A).  Although litigation had not yet commenced, the documents were created because litigation was expected.  This is sufficient to bring them within the protections of the work-product doctrine.  See Wallace v. Tindall, No. 09–00775–CV–W–FJG, 2010 WL 2545553, at *3 (W.D. Mo. June 18, 2010) ("Northland was certainly aware that litigation was a possibility when it took the statement of Lamont Tindall a few days after the accident.  The Court therefore finds that the statement was taken in anticipation of litigation.").  The work-product doctrine applies to these documents.

### 2.    Waiver

Defendants contend that even if the work-product doctrine applies to the sought-after testimony or documents, it was waived.  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 18, ECF No. 268.)  They argue that "[v]irtually all of the questions that were the

subject of the challenged instructions related to conversations between Karabinis <u>and</u>
<u>independent third party entities</u> or documents that were sent to (and in some cases signed
by) <u>independent third parties</u>."  (<u>Id.</u>)  As a result, Defendants assert that there was no
intention to keep these documents and conversations confidential and this disclosure to
independent third parties waived the privilege.  (<u>Id.</u> (citing <u>Pulse Eng'g, Inc. v. Mascon,</u>
<u>Inc.</u>, Civil No. 08cv0595 JM (AJB), 2009 U.S. Dist. LEXIS 92971, *9 (S.D. Cal. Oct. 2,
2009).)

Plaintiff disputes that any waiver took place.  (Opp'n 18, ECF No. 279.)  Odyssey
explains that "[c]onfidentiality clauses and expectations of confidentiality demonstrate
that the parties sought to avoid potential adversaries obtaining the information." (<u>Id.</u> at
19 (citations omitted).)  Odyssey maintains that the information exchanged and the
communications themselves did not occur in a way that would substantially increase the
chances that an adversary might learn of them.  (<u>Id.</u>)

In the Reply, Defendants contend that Plaintiff is mistaken in its assertion that the
third parties with whom it was negotiating were not adversaries.  (Reply 14, ECF No.
288.)  "Karabinis admitted that the parties with whom he was negotiating were
independent third parties." (<u>Id.</u>)  As a result, they argue that there was no common
interest between Plaintiff and these third parties.  (<u>Id.</u> (citations omitted).)

"[A]ttorney work-product protection is not automatically waived upon disclosure
to third parties." <u>Cal. Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.</u>, 299 F.R.D.
638, 645 (E.D. Cal. 2014).  Rather, "'[d]isclosure to [a] person with interest common to
that of attorney or client is not inconsistent with intent to invoke work product doctrine's
protection and would not amount to waiver.'" <u>Id.</u> (quoting <u>In re Doe</u>, 662 F.2d 1073,
1081 (4th Cir. 1981)).  "In the context of work product, common interest is more broadly
construed to include disclosure to third parties." <u>Bofi Fed. Bank v. Erhart</u>, Case No.:
15cv2353 BAS (NLS), 2016 WL 4150983, at *4 (S.D. Cal. Aug. 5, 2016).

Several courts have found that the attorney work-product protection that attaches to
litigation financing documents is not waived when these documents are disclosed to

11

third-party litigation funders.  See Ocwen Loan Serv., LLC, 2016 WL 1031157, at *6
("[T]he Court finds that the protected information was not waived by disclosure to the
possible or actual litigation funders.  Litigation funders have an inherent interest in
maintaining the confidentiality of potential clients' information . . . ."); Doe, 2014 WL
1715376, at *4 ("Plaintiff did not waive the attorney work product protection by sharing
the Financing Materials with the litigation financing companies."); Mondis Tech., Ltd.,
2011 WL 1714304, at *3 ("[A]lthough these documents [regarding litigation funding]
were disclosed to third parties, the disclosures do not create a waiver because they were
disclosed subject to [nondisclosure] agreements and thus did not substantially increase
the likelihood that an adversary would come into possession of the materials.").

        Here, the Court finds that no waiver of the attorney work-product privilege took
place by disclosure of the documents to third parties.  These disclosures occurred
pursuant to confidentiality agreements and an expectation that the information would
remain confidential.  (See Opp'n 18, ECF No. 279.)  This did not increase the likelihood
that an adversary would come to possess them.  See Mondis Tech., 2011 WL 1714304, at
*3.  Moreover, regardless of the Defendants' protestations, the third parties here shared a
common interest with Odyssey.  See Cal. Sportfishing Prot. Alliance, 299 F.R.D. at 645
(quoting In re Doe, 662 F.2d at 1081).  As a result, there was no waiver.

        **3.    Substantial need for the documents**

        Despite the applicability of the attorney work-product privilege to the documents at
issue, they may still be discovered if "(i) they are otherwise discoverable under Rule
26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare
its case and cannot, without undue hardship, obtain their substantial equivalent by other
means."  Fed. R. Civ. P. 26(b)(3)(A).  Defendants contend that they have a substantial
need for these documents for their damages case, they cannot obtain their substantial
equivalent from another source, and obtaining information from another source would
cause an undue hardship.  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 18, ECF
No. 268 (citing Fletcher, 194 F.R.D. at 671).)  They argue that "[a]ny agreements that

12

Odyssey has in its possession, custody and control regarding investment in the patents-in-suit, and/or licensing of the patents-in-suit, are important and unique because Odyssey has produced no other agreements in this case." (Id. at 19.)

Defendants additionally assert that no substantial equivalent of these documents exists. (Id. at 20.) "This is not a situation where the documents at issue are mere corroborative evidence. Here, the documents at issue are the only evidence of the particular deals and negotiations at issue, and further, and as set forth above, there are no other agreements Odyssey has produced . . . ." (Id.) They explain that Karabinis has admitted that he does not have knowledge of the particular deals and negotiations at issue. (Id.) Defendants moreover contend that "obtaining information from another source would create undue hardship . . . due to the timing of the dispute." (Id.) They explain that Plaintiff only produced the documents in June of 2016, and that after it clawed them back, Defendants have yet to be successful in obtaining this information from the third party investors implicated in these agreements. (Id. at 20-21 (citations omitted).)

Odyssey responds that "even if the requested materials were ordinary work product, and not opinion work product, Defendants still did not demonstrate a substantial need for those materials or an undue hardship." (Opp'n 16, ECF No. 279.) Plaintiff asserts that this is the case because the materials sought are irrelevant to the claims and defenses in the litigation. (Id.)

The Court finds that Defendants have met both requirements of Federal Rule of Civil Procedure 26(b)(3)(A) to compel production of the documents at issue, despite the applicability of the work-product doctrine. Regarding the first prong, the documents "are otherwise discoverable under Rule 26(b)(1)." See Fed. R. Civ. P. 26(b)(3)(A)(i). Defendants seek these documents to learn about valuations placed on the Odyssey patents prior to the present litigation. Because Odyssey seeks damages from the alleged infringement of its patents, (see Am. Compl. 22, ECF No. 37), valuations of Odyssey's

patents are directly relevant to these claims, <u>see</u> Fed. R. Civ. P. 26(b)(1).  This conclusion disposes of the Plaintiff's relevance objection.

Addressing the second prong, the Defendants have shown a "substantial need for the materials to prepare [their] case and cannot, without undue hardship, obtain their substantial equivalent by other means."  <u>See</u> Fed. R. Civ. P. 26(b)(3)(A)(ii).  Defendants assert, and Plaintiff does not dispute, that Defendants have not yet been able to obtain this information from third parties.  Moreover, Defendants have not been given any other documents regarding valuations of Plaintiff.  Consequently, they have demonstrated their inability to obtain this information without undue hardship.  Production of these documents is warranted.

Accordingly, the Motion to Compel as to the request to produce the two documents at issue is **GRANTED in part**.  Although the Court is ordering production of the two documents, it still must "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation."  Fed. R. Civ. P. 26(b)(3)(B).  Here, Defendants have demonstrated relevance of the documents with regard to the valuations of Odyssey's patents.  As a result, portions of the documents that do not address these valuations may be redacted before production.

### 4.    Request for similar documents

In the Motion to Compel, Defendants also contend that Odyssey should be compelled to produce "any similar documents that Odyssey has improperly withheld from production under the work [product] doctrine."  (Mot. Compel Attach. #1 Mem. Supp. Mot. Compel 22, ECF No. 268.)  Plaintiff responds that "Defendants' 'Catch-All' Request for Relief is Vague and Insufficient."  (Opp'n 26, ECF No. 279.)  "Defendants appear to be asking for documents similar to the clawed back documents . . . but fail to define what their specific request entails or point to any entries in Odyssey's Privilege Log.  Defendants also provide no argument as to what constitutes a 'similar' document."  (<u>Id.</u> at 26-27 (footnote omitted).)  The Court agrees.  Without knowing the nature of the

additional documents that Defendants seek, the Court cannot make a determination regarding whether they should be produced.  As a result, the request to compel Plaintiff to produce any similar documents it has withheld is **DENIED**.[4]

**B.    Deposition Testimony**

Defendants argue that the work-product doctrine does not bar discovery through oral or deposition testimony.  (Id. at 15 (citing Mitchell Eng'g v. City & Cty. of San Francisco, No. C 08-04022 SI, 2010 WL 455290, at *2 (N.D. Cal. Feb. 2, 2010).)  "As such, Odyssey's counsel's instructions to Karabinis not to answer deposition questions relating to investments and licenses were improper . . . ."  (Id.)

Plaintiff responds that the work-product protection is not limited to documents and tangible things.  (Opp'n 14, ECF No. 279.)  "[I]t also covers intangible thought processes and impressions."  (Id. (citing Hickman, 329 U.S. at 512-13).)  "Accordingly, work-product protection encompasses intangibles, like the memory of the attorney or agents of the attorney, or the client, as well as to oral statements not transcribed or recorded, and mental impressions and thoughts about the case and the underlying legal principles and issues."  (Id. at 15 (citations omitted).)

Defendants argue that "Odyssey's opposition provides no authority for the proposition that the work product doctrine can be used to bar the discovery of facts, that a party may have discovered from documents, through deposition testimony."  (Reply 10, ECF No. 288.)  They contend that Plaintiff has not shown that the questions asked of Karabinis during his deposition would have revealed mental impressions, conclusions, or other matters.  (Id.)  Defendants maintain that they were only asking about "simple facts relating to the documents and communications" at issue; they were not asking about the

_____

[4]  Defendants include in their Reply that on August 1, 2016, Plaintiff "clawed back another email indicating the value of the patents-in-suit."  (Reply 6, ECF No. 288 (citation omitted).)  Plaintiff must, nevertheless, meet and confer with defense counsel in good faith to resolve any ongoing discovery disputes, and counsel should be mindful of the analysis in this order.

entire contents of the documents and communications.  (Id. at 11.)  "Thus, even to the extent the documents and communications in question contained protected mental impressions, conclusions, or similar matters—which Odyssey has never argued to actually be the case—such mental impressions, conclusions and similar matters were not the subject of Defendants' counsels' questions."  (Id.)

"[B]ecause the [work-product] doctrine is intended only to guard against divulging an attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product, or facts contained within work product."  6 James Wm. Moore et al., Moore's Federal Practice, § 26.70[2][a], at 26-435 (footnotes omitted).  As a result, there is no categorical bar to deposition testimony regarding documents protected by the work-product doctrine.  See Mitchell Eng'g, 2010 WL 455290, at *2 (citing Fin. Tech. Int'l, Inc. v. Smith, No. 99 CIV. 9351 GEL RLE, 2000 WL 1855131, at *8 (S.D.N.Y. Dec. 19, 2000)).  Rather, courts have permitted deposition questions regarding the underlying facts contained in documents protected by the work-product document.  See Fed. Chicago Corp. v. Kennedy, No. 86 C 7381, 1989 WL 134498, at *2 (N.D. Ill. Oct. 23, 1989) ("Plaintiff's officer's answers to defendant's deposition questions relating to the factual allegations of the complaint do not fall within work product doctrine which in general terms protects from discovery attorney theories and strategy."); see also D'Alonzo v. Hunt, Civil Action No. 06-1997, 2006 WL 3511712, at *3 (E.D. Pa. Dec. 4, 2006) ("While the work product privilege is applicable to deposition questions seeking to elicit information beyond the underlying facts, it cannot be used to bar questions about [an independent claim adjuster's] knowledge of the facts of this litigation." (citing Phoenix Nat. Corp. v. Bowater United Kingdom Paper Ltd., 98 F.R.D. 669, 670 (N.D. Ga. 1983))).

By contrast, where a document protected by this privilege contains an attorney's opinions, questions regarding those opinions are barred.  See Canel v. Lincoln Nat. Bank, 179 F.R.D. 224, 228 (N.D. Ill. 1998) ("[T]he court finds that the questions all pertain to Mitchell's mental processes, theories, conclusions and opinions contained in privileged

16

Document A.  As Document A is privileged work product, deposition testimony regarding its contents is also privileged.").

As discussed above, the documents in dispute are protected by the attorney work-product privilege.  Consequently, deposition questions regarding mental impressions contained in the documents are barred by this doctrine.  See id.  But questioning regarding the underlying facts and communications surrounding these documents is permitted.  See D'Alonzo, 2006 WL 3511712, at *3; Fed. Chicago Corp., 1989 WL 134498, at *2.  Accordingly, Defendants' Motion to Compel production of Karabinis for deposition is **GRANTED in part**.  Karabinis shall be reproduced for deposition.  The deposition questions shall be limited to the underlying facts and communications surrounding the two documents at issue in the Motion to Compel.

## V.  CONCLUSION

For the reasons stated above, Defendants' Motion to Compel is **GRANTED in part and DENIED in part**.  The Motion to Compel production of the two documents is **GRANTED in part**.  These documents shall be produced to all Defendants no later than October 3, 2016.  Any information contained in these documents not related to valuations of Plaintiff may be redacted.  The Motion to Compel is **DENIED** as to the request to compel Odyssey to produce any similar documents it has withheld.  The Motion to Compel production of Karabinis for deposition is **GRANTED in part**.  Karabinis shall be reproduced for deposition no later than October 17, 2016.  The deposition questions shall be limited to the underlying facts and communications surrounding the two documents, and valuations of the Odyssey patents.  The fact discovery deadline in this case is extended to October 17, 2016, for the sole purpose of compliance with this order.

IT IS SO ORDERED.


Dated:  September 19, 2016

Hon. Ruben B. Brooks
United States Magistrate Judge

cc:
Judge Huff
All Parties of Record

18

15cv1738-H (RBB)